# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ALASKA

In re:

BRANDY A. GARRISON,

Debtor.

Case No. A06-00396-DMD

Chapter 13

**Filed On 6/1/07**

## MEMORANDUM REGARDING VALUATION

    The debtor purchased a 2004 GMC Canyon pick-up from Alaska Sales and Service in Wasilla. She financed the purchase price of $22,019.00 through Denali Alaskan Federal Credit Union. The debtor purchased the vehicle in April of 2004 to use with her job: delivering the *Anchorage Daily News* and the *Frontiersman* newspapers, as well as U.S. mail, to residents of the Wasilla area. While so employed, the debtor had a number of single vehicle accidents that damaged the pick-up substantially. Although she had collision insurance, the debtor did not make any claims with her insurance carrier for repairs. She stated that she could not afford to pay the $500.00 deductible for collision repairs to the vehicle. The debtor deducted expenses related to the vehicle on her 2004 and 2005 Federal income tax returns. In 2004, she deducted $8,481.00 as a car and truck expense. In 2005, she deducted $16,886.00 in car and truck expenses.

    The debtor filed for chapter 13 relief on September 27, 2006. She stopped using the pick-up for deliveries when she began working as a bus driver for the Matanuska-Susitna School District in November of 2006. The debtor's amended plan proposes to strip

down Denali Alaskan's lien to the value she has placed upon the vehicle, $5,810.00. Denali Alaskan has filed a claim for $18,041.00 in this case: $13,450.00 as a secured claim and the balance of $4,591.06 as a general unsecured claim. The debtor has filed a motion to value Denali Alaskan's security interest in the vehicle. A hearing on that motion was held on May 14, 2007.

Under 11 U.S.C. § 506(a), a secured claim may be bifurcated into secured and unsecured components. Prior to the adoption of The Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") in October of 2005, a chapter 13 debtor could bifurcate a car loan under § 506(a), treating the obligation as secured up to the value of the vehicle and any remainder of the claim as unsecured. With the adoption of BAPCPA however, the valuation of secured claims for motor vehicles in chapter 13 cases has changed. BAPCPA amended 11 U.S.C. § 1325(a) by adding what is now commonly referred to as the "hanging paragraph" at the end of § 1325(a)(9). This hanging paragraph provides:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.[1]

---

[1] 11 U.S.C. § 1325(a)(9).

2

In other words, a debtor may not bifurcate a vehicle loan in a chapter 13 plan if: 1) the creditor extending the loan has a purchase money security interest securing that debt, 2) the debt was incurred within 910 days of the date the petition was filed, 3) the collateral for the loan is a vehicle, and 4) the vehicle was acquired for the debtor's personal use.

The first, second and third elements of the hanging paragraph are satisfied here. The debtor purchased the vehicle on April 13, 2004, and filed her chapter 13 petition on September 27, 2006. The debt was incurred within 897 days of the date the petition was filed. There is no dispute that Denali Alaskan holds a perfected purchase money security interest in the vehicle. The issue here is whether the vehicle was acquired for the personal use of the debtor. If so, the hanging paragraph applies and she cannot bifurcate Denali Alaskan's claim.

I find that the evidence in this case supports the debtor's contention that her vehicle was purchased for business use. Under the statute, a court looks to the debtor's intent regarding use at the time the vehicle was acquired rather than the date of the filing of her petition in bankruptcy.[2] When the debtor purchased the pick-up in April of 2004, she intended to use it for her newspaper and mail delivery business. She used the vehicle for this purpose for more than two years. She deducted expenses related to the vehicle on her 2004 and 2005 tax returns. The vehicle was clearly used for substantial business activity by the debtor.

---

[2]*See In re Lorenz*, __ B.R. __, 2007 WL 1189608 at 7 (Bankr. E.D.Va. 2007); *In re Solis*, 356 B.R. 398, 408-09 (Bankr. S.D.Tex. 2006); *In re Hill*, 352 B.R. 69, 72 (Bankr. W.D.La. 2006); *In re Johnson*, 350 B.R. 712, 716 (Bankr. W.D.La. 2006).

3

Cases interpreting the "personal use" issue which arises under the hanging paragraph generally support the debtor's position. Some courts have interpreted the hanging paragraph very liberally, finding that a debtor's use of a vehicle to commute to and from work is not a personal use.[3] Under this interpretation, any debtor who uses a vehicle to commute to work would be exempt from the hanging paragraph and could bifurcate a vehicle loan in a chapter 13 case. The majority of the courts considering the issue have found that the debtor's purchase of a car to commute to and from work is a personal use.[4] However, these courts recognize that business use of a vehicle may take the vehicle out of the personal use category, even in instances where the vehicle is also applied to a debtor's personal uses.[5] A factor that appears critical in making the distinction between business and personal use is whether the debtor is required to use the vehicle in the course of her employment.[6] Here, the

---

[3]*Hill,* 352 B.R. at 73-74; *Johnson*, 350 B.R. at 716.

[4]*In re Joseph*, 2007 WL 950267 (Bankr. W.D.La. 2007) (debtor's use of vehicle for transportation to and from work was a personal use; vehicle was not used to carry out job duties once she arrived at work); *In re Phillips,* __ B.R. __, 2007 WL 706834 (Bankr. E.D.Va. 2007) (debtor's use of minivan for commuting and family purposes was for personal use; minivan was not acquired for a business venture or with profit motive); *In re Wilson*, 2006 WL 3512921 (Bankr. D.Kan. 2006) (debtor's use of car for commuting and transporting foster children to school as well as other miscellaneous purposes fell within provisions of hanging paragraph); *In re White,* 352 B.R. 633 (Bankr. E.D.La. 2006) (hanging paragraph applied where debtor used vehicle to commute to work but did not use it for business after she arrived at her place of employment or deduct any expenses for its use on tax returns); *In re Lowder*, 2006 WL 1794737 (Bankr. D. Kan. 2006) (vehicle purchased for debtor's own use, including contemplated use of commuting to and from work, was acquired for personal use).

[5]*See, e.g., Joseph*, 2007 WL 950267 at 4 (court should look at totality of circumstances and if business use is predominant use of vehicle, hanging paragraph doesn't apply even if debtor also uses vehicle for personal use)*; Solis*, 356 B.R. at 410 (the personal use requirement is satisfied if the debtor's personal use of the vehicle is significant and material, regardless of whether there is also some business use).

[6]*In re Martinez*, __ B.R. __, 2007 WL 744643 (Bankr. S.D.Tx. 2007) (debtor's use of vehicle to travel to and from work and within scope of his employment to run work-related errands was business use).

debtor wasn't just using her pick-up to commute to and from work, she was using the vehicle in the course of her work. She used it to deliver newspapers and mail, often racking up hundreds of miles in a day. Given the substantial business use for the vehicle, I conclude that the hanging paragraph doesn't apply to this debtor. She may bifurcate the credit union's claim under 11 U.S.C. § 506(a).

Denali Alaskan holds a secured claim "to the extent of the value of such creditor's interest in the estate's interest" in the vehicle.[7] What is the 2004 GMC Canyon worth in its present condition? Such a vehicle in good condition would have a blue book value of $12,425.00. The debtor's pick-up is not in good condition though. Costs to repair her vehicle would run about $5,333.00. Deducting the repair costs from the blue book value leaves a balance of $7,092.00. For the purposes of valuation under § 506(a), I conclude that Denali Federal Credit Union has a secured claim in that amount. The balance of its claim, $10,949.06, is a general unsecured claim.[8] An appropriate order on valuation of the vehicle will be entered.

It is important to note that my findings today deal solely with the applicability of the hanging paragraph to Denali Alaskan's claim and the valuation of the secured portion of that claim. No determination is being made at this point as to whether the debtor has proposed a confirmable plan that complies with the good faith requirement of 11 U.S.C. §

---

[7] 11 U.S.C. § 506(a).

[8] Denali Alaskan's total claim in this case is for $18,041.06. Deducting the value of the pick-up, $7,092.00, from this figure leaves a balance of $10,949.06.

5

1325(a)(7). Given the debtor's failure to repair the vehicle following several collisions, she may have difficulty meeting this standard.

DATED: June 1, 2007.

BY THE COURT

/s/ Donald MacDonald IV
DONALD MacDONALD IV
United States Bankruptcy Judge

Serve: C. Johansen, Esq.
D. Clark, Esq.
L. Compton, Trustee
U.S. Trustee

06/01/07